# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SOO HYUN KIM, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2020-0772-JRS** |
| | ) | |
| COUPANG, LLC, a Delaware limited | ) | |
| liability company, f/k/a Forward | ) | |
| Ventures, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  June 1, 2021
Date Decided:  August 19, 2021

Kenneth J. Nachbar, Esquire and Alexandra M. Cumings, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware and Lee H. Rubin, Esquire of Mayer Brown LLP, Palo Alto, California, Attorneys for Plaintiff Soo Hyun Kim.

Matthew E. Fischer, Esquire and Aaron R. Sims, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware and Shahzeb Lari, Esquire of Hughes Hubbard & Reed, LLP, New York, New York, Attorneys for Defendant Coupang, LLC f/k/a Forward Ventures, LLC.

**SLIGHTS, Vice Chancellor**

Plaintiff, Soo Hyun Kim, alleges Defendant, Coupang, LLC ("Coupang" or the "Company"), wrongfully cancelled and disavowed certain equity interest he held in the Company ("Profit Units"), which were granted to him under his 2011 employment agreement. According to Kim, he discovered the wrongdoing when he contacted the Company on June 13, 2020, to inquire about the Profit Units, only to be told that they no longer existed. He initiated this action soon after, seeking a declaration that he is the rightful owner of the Profit Units (Count I), specific performance of his employment agreement with respect to the Profit Units (Count II) or, in the alternative, monetary damages for wrongful conversion (Count III).

Coupang seeks dismissal of all counts under the equitable doctrine of laches. Pointing by analogy to the applicable statute of limitations, Coupang argues that the three-year statute of limitations started running, at the latest, in 2015, when Kim's Profit Units were scheduled to vest but did not. With this in mind, Coupang maintains that Kim's 2020 complaint was filed, at a minimum, two years too late.

At times, the issue of statute of limitations and, by extension laches, can be determined from the face of the complaint as a matter of law. Other times, the resolution of a laches defense must await further development of the factual record. This is one of those times where more facts are needed to adjudicate the defense. Specifically, it is difficult to discern from the complaint precisely when Kim's claims accrued. And it is reasonably conceivable they accrued within three years of

1

the filing of the complaint. Accordingly, Coupang's motion to dismiss for laches must be denied.

Coupang also seeks dismissal of Kim's conversion claim on the independent ground that it improperly duplicates his contract claim. Here, I agree with Coupang. Because Kim has failed meaningfully to distinguish his breach of contract claim from his conversion claim, the conversion claim must be dismissed.

## I. BACKGROUND

I have drawn the facts from well-pled allegations in the Verified Complaint (the "Complaint") and documents incorporated by reference or integral to that pleading.[1] For purposes of the motion, I accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiff's favor.[2]

### A. Parties

Plaintiff, Soo Hyun Kim, a resident of South Korea, is a former of employee of Coupang.[3]

Defendant, Coupang, is a private e-commerce limited liability company formed under the laws of Delaware (as Forward Ventures, LLC) on May 28, 2010,

---

[1] Verified Compl. ("Compl.") (D.I. 1); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[3] Compl. ¶ 3.

and headquartered in Seoul, South Korea.[4]  The Company changed its name to Coupang, LLC in December 2016.[5]  Coupang is one of the largest online e-commerce retailers in South Korea.[6]

## B. The Employment Contract and Kim's Tenure at Coupang

In January 2011, Kim joined Coupang to become one of its earliest employees in the role of Head of Sales.[7]  Kim entered into his employment agreement with the Company in April 2011 (the "Employment Contract").[8]  The  Employment Contract promised Kim, among other consideration, "105,000 Profit Units over the period of 4 years," with a portion of the units vesting every 12 months.[9]  The signing of the Employment Contract marked the culmination of Coupang's courtship of Kim, consummated when Kim agreed to leave his previous employer, Naver Corporation, a technology conglomerate that operates a Korean search engine.[10]

---

[4] Compl. ¶ 4.

[5] *Id.*

[6] *Id.*

[7] Compl. ¶ 9.

[8] Compl. ¶ 10.

[9] Compl. ¶ 11.

[10] Compl. ¶ 8.

During Kim's tenure at Coupang, from January 2011 until his departure in July 2016, the Company grew significantly from a startup with only a few employees to an e-commerce giant.[11]  In the same year Kim departed Coupang, 2016, the Company underwent a 10:1 stock split.[12]

## C. The Dispute Regarding Kim's Profit Units

Almost four years after he left the Company, in May 2020, Kim contacted the Company and requested documentation concerning his ownership of the Profit Units specified in the Employment Contract.[13]  In Kim's view, since his tenure at the Company exceeded the four-year vesting period, the entirety of the bargained-for Profit Units should have been conveyed under the terms of the Employment Contract no later than April 1, 2015.[14]  Upon the Company's stock split in 2016, the number of Profit Units should have increased to 1,050,000 units, which Kim alleges could be worth approximately $10 million.[15]

After the parties exchanged emails over several weeks, in a response dated June 13, 2020, the Company declared to Kim that he no longer had a right to any

---

[11] Compl. ¶ 15.

[12] Compl. ¶ 13.

[13] Compl. ¶ 16.

[14] Compl. ¶ 12.

[15] Compl. ¶¶ 13, 34.

4

Profit Units (the "June 2020 Email").[16] Instead, Coupang explained that the original promise of Profit Units had been "superseded" and substituted with a "much larger" grant of unit options (in a to-be-created unit option plan) "a few months" after the execution of the Employment Contract.[17]

### D. Procedural History

Three months later, on September 10, 2020, Kim filed this lawsuit against the Company seeking a declaration that he owns 1,050,000 Profit Units and specific performance of the Employment Contract where those units were promised to him.[18] In the alternative, Kim asserts a claim for conversion and related compensatory damages. Defendant promptly filed a motion to dismiss on November 13, 2020, and the Court held a hearing on the motion on June 1, 2021.[19] The motion was submitted for decision that day.

## II. ANALYSIS

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

---

[16] Compl. ¶¶ 17, 28; Def.'s Opening Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl. ("OB") (D.I. 9), Ex. 2.

[17] OB, Ex. 2. The nature or status of this substituted equity is not clear from the Complaint.

[18] D.I. 1.

[19] D.I. 9.

(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[20]

Kim is correct that a laches defense is often fact-intensive and, therefore, not readily susceptible to adjudication at the pleadings stage.[21] But "[t]here is no rule barring [laches] as the basis for dismissal under Rule 12(b)(6) where 'it is clear from the face of the complaint that [laches] exists and that the plaintiff can prove no set of facts to avoid it.'"[22] When determining which state of play exists upon review of

---

[20] *Savor*, 812 A.2d at 896–97 (citation omitted).

[21] *See Stewart v. Wilm. Tr. SP Servs., Inc.*, 112 A.3d 271, 295 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015) (noting that the "defense of laches is not ordinarily well-suited for treatment on a Rule 12(b)(6) motion" (internal quotation marks omitted)); *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009) ("[In] ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings. Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate." (citations omitted)).

[22] *de Adler v. Upper New York Inv. Co. LLC*, 2013 WL 5874645, at *12 (Del. Ch. Oct. 31, 2013) (quoting *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009)); *see also Akrout v. Jarkoy*, 2018 WL 3361401, at *11 (Del. Ch. July 10, 2018) ("When it is clear from the face of the complaint that the claims are time-barred, particularly when an analogous statute of limitations is in play, it is appropriate to adjudicate the claims then and there on a motion to dismiss . . . ." (internal quotations omitted) (citations omitted)); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *15 (Del. Ch. Aug. 7, 2012) ("A claim may be dismissed for failure to comply with the statute of limitations if the facts pled in the complaint, and the documents incorporated within the complaint, demonstrate that the claims are untimely." (internal quotations omitted)).

6

the complaint, the court must be mindful that the questions of when a statute of limitations began to run or whether the statute was tolled are often acutely fact-intensive.[23]

## A. The Laches Defense

"Laches is an equitable defense born from the longstanding maxim [that] equity aids the vigilant, not those who slumber on their rights."[24] Under Delaware law, both the doctrine of laches and the statute of limitations function to bar untimely filed lawsuits.[25] Unlike the statute of limitations, which sets a specific time within which particular claims must be filed, the equitable doctrine of laches inquires more broadly whether the plaintiff filed his claim within a reasonable time from the

---

[23] *See, e.g.*, *Bush v. Hillman Land Co.*, 2 A.2d 133, 136 (Del. Ch. 1938) ("[W]hat constitutes laches . . . is so dependent for its demonstration on the facts . . . that the court should be quite clearly of the opinion that it exists before saying so . . . and it is in the discretion of the court to defer its decision upon that question until the stage of the case has been reached when it can be passed upon in the light of fuller and more illuminating information than is now available."); *Wal-Mart Stores, Inc.*, 860 A.2d at 320 (holding that whether plaintiff was on inquiry notice at a given date, to establish the tolling of the statute of limitations, was an intensely factual question not appropriate at the motion to dismiss stage); *Stoppel v. State, Dep't of Health & Soc. Servs.*, 2011 WL 3558120, at *4 n.13 (Del. Super. Ct. Aug. 9, 2011) ("Because the Amended Complaint does not on its face exclude the possibility that Stoppel's claims are timely under the Whistleblowers' Act, dismissal on statute of limitations grounds would not be appropriate. From the limited account of events currently provided to the Court, it appears that the determination of when the limitations period commenced could be a fact-intensive inquiry.").

[24] *Reid*, 970 A.2d at 182 (internal quotations omitted).

[25] *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 7 (Del. 2009).

claim's accrual.[26] When considering whether to bar a claim under laches, the court considers when the plaintiff learned of the claim, whether he pursued the claim thereafter without unreasonable delay and whether any delay in filing has resulted in prejudice to the defendant.[27]

While the application of laches is not governed by specified time restrictions, in cases where the asserted claims are common law claims seeking common law remedies, this court has made clear that a "plaintiff 'should not be placed in a potentially better position [having filed in Chancery] to seek to avoid a statute of limitations than if she had filed in a Delaware court of law by invoking the more flexible doctrine of laches.'"[28] In fact, "a filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches . . . and prejudice to defendants is thus presumed."[29] In such cases, "absent

---

[26] *Id.*

[27] *Id.* at 9 ("[L]aches generally requires proof of three elements: first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant." (internal quotations omitted)); *Reid*, 970 A.2d at 182 ("Although there is no hard and fast rule as to what constitutes laches, it is generally defined as an unreasonable delay by the plaintiff in bringing suit after the plaintiff learned of an infringement of his rights, thereby resulting in material prejudice to the defendant.").

[28] *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530, at *5 (Del. Ch. Nov. 2, 2017), *aff'd*, 2019 WL 244619 (Del. Jan. 17, 2019) (TABLE) (quoting *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 976 (Del. Ch. 2016)).

[29] *Baier v. Upper New York Inv. Co. LLC*, 2018 WL 1791996, at *11–12 (Del. Ch. Apr. 16, 2018); *see also CMS Inv. Hldgs., LLC v. Castle*, 2016 WL 4411328, at *2 (Del. Ch. Aug. 19, 2016) ("[T]he Court will bar claims outside the limitations period absent tolling

some unusual circumstances, a court of equity will deny a plaintiff relief when suit is brought after the analogous statutory period."[30] It is undisputed that the statute of limitations applicable to Kim's claims is three years.[31]

In this case, Coupang's reliance upon laches has triggered two appurtenant inquiries: (1) may the Court consider the contents of Defendant's June 2020 Email if not incorporated by reference in the Complaint, and (2) does the Complaint clearly reveal a date on which Kim's claims accrued? As explained below, because the

---

or extraordinary circumstances, even in the absence of demonstrable prejudice." (internal quotations omitted)).

[30] *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 502 (Del. 1996); *see also Daugherty v. Highland Cap. Mgmt., L.P.*, 2018 WL 3217738, at *7 (Del. Ch. June 29, 2018) (noting that courts need not engage in a traditional laches analysis for a presumptively late complaint, and where "a claim is brought in Chancery that would be barred by a statutory limitation if brought at law, the same claim will be barred here by analogy to the statute, absent 'extraordinary circumstances'"); *de Adler*, 2013 WL 5874645, at *12 ("Where a party files a claim after the presumptive period, the claim is likely time-barred except in the rare and unusual circumstance that a recognized tolling doctrine excuses the late filing . . . . The Court does not need to engage in a traditional laches analysis for a presumptively late complaint." (internal quotations omitted) (citations omitted)); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005) ("[W]here the analogous statute of limitations at law [] has run, a plaintiff is barred from bringing suit without the necessity of the court engaging in a traditional laches analysis."); *Kraft*, 145 A.3d at 982–83 ("[A]n analogous limitations period should operate as a strong presumption of laches for cases in this Court's concurrent jurisdiction, which generally will obviate the need for a traditional laches inquiry."). I note that neither side claims the existence of extraordinary circumstances. Accordingly, I focus almost exclusively on the statute of limitations as a proxy for laches.

[31] OB at 11; *see also Akrout*, 2018 WL 3361401, at *11 ("Under 10 *Del. C.* § 8106, a three-year period of limitations applies to claims sounding in tort, contract, or breach of fiduciary duty for damages caused by an injury unaccompanied with force and that three-year period applies by analogy to proceedings in equity." (internal quotations omitted)).

answer to both inquiries is "no," the Court cannot adjudicate Coupang's laches defense on the pleadings.

## 1. Incorporation by Reference of the June 2020 Email

Coupang argues that the full text of the June 2020 Email makes clear that the analogous statute of limitations began to run in 2011 when, shortly after the execution of the Employment Contract, Coupang purported to swap Kim's Profit Units with another form of equity options.[32] According to Coupang, the Court may consider the contents of the June 2020 Email as fact when determining the date on which Kim's claims accrued. But its argument reveals a misunderstanding of our incorporation by reference law.

As already mentioned, in adjudicating a motion to dismiss, the Court may look to documents attached to the complaint as well as any documents that are incorporated by reference in or "integral" to the pleading.[33] Under the incorporation by reference doctrine, "[a] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms."[34] In other words, when reviewing the *bona fides* of a complaint's pled

---

[32] OB at 12–13.

[33] *Wal-Mart Stores, Inc.*, 860 A.2d at 320.

[34] *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019) (cleaned up).

facts based on incorporated documents, "[t]he incorporation-by-reference doctrine permits a court to review the actual document to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn [from the document] is a reasonable one."[35] When reviewing supposedly incorporated documents, however, the court may not consider whether their contents state the truth, but rather must consider only whether the documents say what the plaintiff alleges they say.[36]

Kim did not attach the June 2020 Email as an exhibit to the Complaint, but he did make multiple references to the date on which the email was written and what occurred on that date.[37] In this sense, the June 2020 Email is not completely out of bounds on this motion to dismiss. For instance, to the extent Kim mischaracterized what he was told by the Company on that day, even if he did not explicitly reference the June 2020 Email, that document would be fair game to correct misstatements in Kim's Complaint for the purpose of ensuring the Court did not draw unjustified

---

[35] *Id.*

[36] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995) (permitting incorporation by reference where "the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated") (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see In re New Valley Corp. Deriv. Litig.*, 2001 WL 50212, at *5 (Del. Ch. Jan. 11, 2001) ("[T]he document is used not to establish the truth of the statements therein, but to examine only what is disclosed.").

[37] Compl. ¶¶ 17, 22, 28, 34.

inferences.[38] The document would not be, and is not, fair game, however, if presented to introduce new facts in support of an affirmative defense asserted as a basis to justify a pleading stage dismissal of the Complaint.[39]

According to Kim, at best for Coupang, the June 2020 Email reveals that June 13, 2020 was the date on which Coupang made known to Kim that it had cancelled his Profit Units after having concealed that fact and, thus, reveals the date on which the statute of limitations began to run.[40] Kim further maintains that the June 2020 Email actually demonstrates that the Profit Units were not formally "cancelled" and "disavow[ed]" until the date of the email, June 13, 2020.[41] In response, Coupang argues that the June 2020 Email makes clear, as fact, that

---

[38] *Voigt v. Metcalf*, 2020 WL 614999, at *9 (Del. Ch. Feb. 10, 2020).

[39] *Id.*

[40] Compl. ¶ 14 (alleging Kim trusted the Company to maintain his Profit Units after he left the Company and that he had no reason before June 2020 "to believe that his Profit[] Units were at risk"); *Whittington*, 991 A.2d at 9 (holding that the plaintiff's knowledge of the claim must be considered in the laches analysis); *In re Primedia, Inc. S'holders Litig.*, 2013 WL 6797114, at *12 (Del. Ch. Dec. 20, 2013) (noting that applicable tolling doctrines can alter the accrual date).

[41] Compl. ¶ 17 ("On June 13, 2020, the Company purported to cancel and disavow Kim's Profits Units interest, informing him that the Company did not recognize his ownership of any Profits Units and did not intend to honor those Profits Units."); ¶ 22 ("On June 13, 2020, the Company purported to cancel and disavow Kim's Profits Units interest, and informed Kim that it will not recognize his ownership interest."); ¶ 28 ("On June 13, 2020, the Company purported to cancel and disavow Kim's Profits Units, and informed Kim that it will not perform its obligation under the contract to recognize Kim's ownership interest."); ¶ 34 ("On June 13, 2020, the Company converted Kim's Profits Units when it informed Kim that it would no longer recognize his ownership interest.").

12

Coupang cancelled Kim's Profit Units shortly after they were granted, back in 2011, when they were purportedly converted to another form of equity options as part of an incentive equity plan to be created.[42]

While Coupang's characterization of the June 2020 Email may well be borne out in discovery, for now, the characterization does not comport with what has been pled in the Complaint.[43] To be sure, the June 2020 Email does not appear to communicate that the Company had then and there cancelled the Profit Units, as alleged by Kim, but it is also not clear from the email that the cancellation of the Profit Units mentioned therein was ever actually communicated to Kim prior to June 13, 2020. At this stage, the Court may not "resolve disputed facts" nor may it draw inferences from an extraneous document that run contrary to inferences reasonably drawn from the Complaint.[44] That fact-finding must await further proceedings.

---

[42] OB, Ex. 2.

[43] Compl. ¶¶ 17, 22, 28, 34; *see In re Clovis Oncology, Inc. Deriv. Litig.*, 2019 WL 4850188, at *14 n.201 (Del. Ch. Oct. 1, 2019) (holding that a defendant cannot "rewrite" a plaintiff's complaint on a motion to dismiss by presenting a new or different factual narrative).

[44] *Abbey v. E.W. Scripps Co.*, 1995 WL 478957, at *1 (Del. Ch. Aug. 9, 1995); *Santa Fe*, 669 A.2d at 68.

## 2. The Accrual Date of Plaintiff's Claims

Laches is an affirmative defense, meaning Coupang bears the burden of proving that Kim's claims are barred under the doctrine as a matter of equity.[45] Given this dynamic, as both a general and practical matter, "affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)."[46] As noted, the often fact-intensive nature of the accrual inquiry makes laches a particularly (but not impossible) affirmative defense upon which to secure pleading stage dismissal of a complaint.[47]

"Delaware is an 'occurrence rule' jurisdiction, meaning a cause of action accrues at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action. In Delaware, for contract claims, the wrongful act occurs at the time a contract is breached."[48] On the other hand, the Court is obliged to consider Kim's "knowledge of the claim" in the laches analysis and the extent to which a tolling

---

[45] *See SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398, at *2 (Del. Super. Ct. Dec. 6, 2012) ("[T]he defendant bears the burden of proving that a limitations period has lapsed and that claim is time-barred." (internal quotations omitted)); *Medek v. Medek,* 2008 WL 4261017, at *10 (Del. Ch. Sept. 10, 2008) (noting that the defendant maintains the burden of proof where it asserts estoppel, unclean hands, laches and waiver).

[46] *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003).

[47] *Winston v. Mandor*, 710 A.2d 831, 832 (Del. Ch. 1996).

[48] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020) (cleaned up).

doctrine might affect the accrual analysis.[49]  With this guidance in mind, the Court must determine whether Coupang has demonstrated, based on any allegation in the Complaint or a document properly incorporated by or integral to the Complaint, that Kim's claims accrued on a fixed date prior to September 10, 2017 (assuming no tolling), the date that marks three years from the date Kim filed his Complaint. Based on my review of the Complaint, the accrual date is not so easy to fix.  Instead, several possibilities emerge from reasonable inferences.

*First*, the claims may have accrued at some point in 2011, as Coupang argues, based on the June 2020 Email.[50]  Specifically, Coupang may have modified the form of Kim's equity as explained in the email and may have made that known to Kim, or at least not concealed that fact from Kim, at or soon after the modification occurred.  Under that scenario, Kim's claims would be barred by laches.

*Second*, the claims may have accrued after the signing of the Employment Contract but no later than April 1, 2015, the latest date on which Coupang asserts, under the Employment Contract, that the Profit Units should have vested.[51] According to Coupang, had Kim been diligent in pursuing his claim to the Profit Units, he would have discovered on or after April 1, 2015, that they had not vested

---

[49] Compl. ¶ 14; *Whittington*, 991 A.2d at 9; *Primedia*, 2013 WL 6797114, at *12.

[50] OB, Ex. 2.

[51] OB at 14.

15

(because they did not exist).[52]  Under this scenario, Kim's claims would likely be barred by laches.  Again, this presents a fact-intensive inquiry that extends well beyond the Complaint.

*Third*, the claims may not have accrued until June 13, 2020, when Kim alleges he first became aware that Coupang had not preserved his Profit Units and was, instead, repudiating their existence.[53]  If Kim is correct, his claims were timely filed.

Because the accrual date is not "ascertainable from the face of the complaint," and because Coupang bears the burden of demonstrating the accrual date as part of its laches defense, the Court is not able to adjudicate that defense on this motion to dismiss.[54]  I note that because the date on which the statute of limitations began to

---

[52] Def.'s Reply Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl. (D.I. 35) at 14 ("Based on the face of the Complaint, Plaintiff's claims accrued no later than April 1, 2015, the date on which the Profit Units were meant to fully vest under the terms of the Employment Agreement.").

[53] Compl. ¶ 14.

[54] *Cent. Mortg. Co.*, 2012 WL 3201139 at *16.  Defendant also argues that, regardless of the applicable statute of limitations and when it began to run, the traditional elements of laches have been satisfied.  OB at 25–26; *see also Whittington*, 991 A.2d at 9 ("[L]aches generally requires proof of three elements: first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant." (internal quotations omitted)).  Like my analysis with respect to the statute of limitations, however, whether Kim was on inquiry notice long ago and unreasonably sat on his rights is fact-intensive and not appropriate for adjudication at this stage.  *Wal-Mart Stores, Inc.*, 860 A.2d at 320 (holding that inquiry notice, in general, is fact-intensive and often not suited for resolution on the pleadings).

run is unclear, I need not decide at this stage whether Kim has stated a sufficient basis to toll the applicable statute of limitations.[55]

## B. The Conversion Claim

Kim alleges Coupang converted vested Profit Units that he rightfully owned on June 13, 2020, when it advised him that it would no longer recognize his ownership interest even after the "full vesting period" had passed.[56] Under Delaware law, conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it."[57] It is an intentional tort.[58] "Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort."[59] "In order to assert a tort claim along with a contract claim, the plaintiff must generally allege

---

[55] OB at 17–24 (discussing reasons why the statute of limitations was not tolled).

[56] Compl. ¶¶ 33–34.

[57] *Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).

[58] *Malca v. Rappi, Inc.*, 2021 WL 2044268, at *5 (Del. Ch. May 20, 2021); *Israel Disc. Bank of New York v. First State Depository Co., LLC*, 2012 WL 4459802, at *11 (Del. Ch. Sept. 27, 2012), *aff'd*, 86 A.3d 1118 (Del. 2014).

[59] *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *14 (Del. Ch. May 29, 2020) (quoting *West v. Access Control Related Enters., LLC*, 2019 WL 2385863, at *4 (Del. Super. Ct. June 5, 2019)).

that the defendant violated an independent legal duty, apart from the duty imposed by contract."[60]

Kim concedes that his contract and conversion claims rest upon nearly identical questions of fact.[61] His conversion claim alleges the Profit Units that were guaranteed by the Employment Contract had been converted.[62] His specific performance claim alleges that Coupang breached the Employment Contract by failing to deliver the Profit Units and should, therefore, be directed to specifically perform that contract by delivering the units.[63] Beyond the fact that one claim sounds in tort while the other sounds in contract, the claims are practically indistinguishable.

In *Smith v. Scott*, this court declined to dismiss a conversion claim as duplicative of a breach of contract claim because there was a sufficient likelihood, as pled, that the "traditional remedy for a conversion," namely the value of the property at the time of the conversion, would not be available through plaintiff's

---

[60] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009).

[61] Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Verified Compl. (D.I. 34) at 20.

[62] Compl. ¶¶ 32–34.

[63] Compl. ¶¶ 26–30.

breach of contract claim.[64]  And, in *Malca v. Rappi, Inc.*, the court declined to dismiss a conversion claim as duplicative where the claim did not "arise solely from a breach of contract" and it was possible the contract at issue would be deemed to lack material terms.[65]  None of these circumstances are present here.  Kim does not argue that specific performance of the Employment Contract would be insufficient to remedy the alleged harm; the conversion claim and the breach of contract claim are virtually indistinguishable; and neither party has argued the Employment Contract lacks material terms or is otherwise unenforceable as written.

Because this court dismisses claims that are clearly not viable on the face of the complaint, Kim's conversion claim must be dismissed.[66]  Subject to the law of the case doctrine, however, Kim may revisit this interlocutory dismissal if discovery provides a basis for doing so.[67]

---

[64] 2021 WL 1592463, at *11 (Del. Ch. Apr. 23, 2021).

[65] 2021 WL 2044268, at *5.

[66] *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *31 (Del. Ch. Feb. 28, 2020) (dismissing claim that was improperly duplicative of other pled claims).

[67] *Bamford*, 2020 WL 967942 at *31 n.24 ("If discovery suggests a role for this claim, then subject to the law of the case doctrine, the plaintiffs may seek to revisit the interlocutory dismissal of Count II for good cause shown."); *Quadrant Structured Prod. Co., Ltd. v. Vertin*, 2014 WL 5465535, at *5 (Del. Ch. Oct. 28, 2014) ("Subject to the law of the case doctrine, it can be revisited should future developments, including evidence generated by the discovery process, provide a compelling reason for doing so.").

## III.    CONCLUSION

Based on the foregoing, the Defendant's Motion to Dismiss Count III is GRANTED.  Defendant's Motion to Dismiss Counts I and II is DENIED.

**IT IS SO ORDERED.**