UNITED STATES CELLULAR INVEST-MENT COMPANY OF ALLENTOWN, a Pennsylvania corporation, Plaintiff Below, Appellant,

v.

BELL ATLANTIC MOBILE SYSTEMS, INC., a Delaware corporation, and Bell Atlantic Mobile Systems of Allentown, Inc., a Delaware corporation, Defendants Below, Appellees,

and

Allentown SMSA Limited Partnership, a Delaware limited partnership, Nominal Defendant Below, Appellee.

No. 326, 1995.

Supreme Court of Delaware.

Submitted: April 16, 1996.

Decided: May 29, 1996.

R. Franklin Balotti, Gregory P. Williams and Raymond J. DiCamillo, Richards, Layton & Finger, Wilmington (David F. Graham,

Kathleen L. Roach (argued), and Steven W. Young, Sidley & Austin, Chicago, Illinois, of counsel), for Appellant.

A. Gilchrist Sparks, III (argued), and Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, for Appellees Bell Atlantic Mobile Systems, Inc. and Bell Atlantic Mobile Systems of Allentown, Inc.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice.

In this appeal from the Court of Chancery, we are required to examine the timeliness of an action for breach of a limited partnership agreement. The plaintiff-appellant, United States Cellular Investment Company of Allentown ("USCIC"), is a limited partner in the Allentown SMSA[1] Limited Partnership (the "Partnership"). USCIC sued the general partner, Bell Atlantic Mobile Systems of Allentown, Inc. (with its affiliated companies, referred to herein as "BAMS"), for breach of the limited partnership agreement (the "Agreement") and breach of fiduciary duty. Specifically, USCIC alleged that BAMS usurped opportunities belonging to the Partnership as these opportunities were defined by the Agreement.

The Court of Chancery initially dismissed the breach of fiduciary duty claims on March 11, 1994, as falling within the safe harbor of 6 *Del.C.* § 17–1101(d) of the Delaware Revised Uniform Limited Partnership Act. The court then granted summary judgment in favor of BAMS on the remaining claim as time-barred. In the latter ruling, the Vice Chancellor applied the breach of contract statute of limitations by analogy and found that the action was filed after the applicable three-year period. The court also rejected the contention that the period of limitations was extended by equitable tolling. Alternatively, the court held the action to be barred by laches in its traditional formulation.

Upon examination of the record, we agree that the contractual action is time-barred. We also conclude that USCIC's complaint, in its present form, does not state a cause of

1. "SMSA" is an abbreviation for Standard Metropolitan Statistical Area.

action for breach of fiduciary duty. Accordingly, we affirm the judgments of the Court of Chancery.

## I.

■ We review the Court of Chancery's grant of summary judgment under a *de novo* standard of review. *Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99 (1992). Thus we view the facts from a perspective which favors USCIC, the non-movant. *Id.* at 99–100.

On March 30, 1984, BAMS, USCIC and other entities not party to this dispute entered into the Agreement to provide cellular telephone service to the Allentown Standard Metropolitan Statistical Area ("SMSA"). BAMS is a limited partner *and* the general partner. It holds a 53.11% interest in the Partnership. USCIC is one of several limited partners and holds an 8.12% interest. This controversy centers on BAMS's activities in Rural Statistical Areas ("RSAs") that adjoin the Allentown SMSA, specifically New Jersey RSAs 1 and 3.

The Agreement contained provisions governing the extent to which the partners were allowed to compete with the partnership. Limited partners, under § 10.4 of the Agreement, could not offer cellular service in the Allentown SMSA.[2] In contrast, under § 8.8 the general partner could not provide cellular service in either the Allentown SMSA or in adjoining areas.[3] Furthermore, the Agreement anticipated that, in the event the general partner made applications for licenses to provide cellular service in these adjoining areas, any such applications were "deemed to be made on behalf of the Partnership" under § 8.8. Following acquisitions on behalf of the Partnership, the general partner was entitled to call for the contribution of additional capital from all parties under § 5.2 of the Agreement.

During the latter part of 1988, USCIC, in the course of negotiating settlements to acquire RSA licenses in other locations, encountered differing interpretations of the language contained in section 8.8 of the Agreement. This provision is evidently fairly common in cellular limited partnership agreements. Counsel for USCIC, Michael Hron, sent a form letter to the general partner of every partnership in which USCIC or an affiliate was a limited partner. The letter to BAMS, dated January 25, 1989, quoted § 8.8 and proceeded to describe USCIC's understanding of the effect of the language:

It is clear from the . . . language in the first sentence of this section that neither the general partner [BAMS] nor any Affiliate . . . of the general partner was to provide Cellular Service . . . independently from the Partnership in any area adjoining the [Allentown] SMSA. The second sentence provides categorically that any application filed by the general partner or an Affiliate of the general partner is deemed to be an application on behalf of the Partnership. . . .

USCIC expects the provisions of the partnership agreement concerning the areas adjoining the SMSA to be honored. If they are not USCIC intends to seek an appropriate remedy for breach of the partnership agreement.

After receiving no response, Hron again wrote to BAMS on March 2, 1989, stating that USCIC would assume that BAMS agreed with the interpretation in the earlier letter unless it heard otherwise. BAMS made no response to the second letter.

---

2. The Partnership Agreement § 10.4 provides:

> 10.4 *Cellular Service in Other Areas.* Nothing herein shall preclude any Limited Partner or an Affiliate thereof from providing Cellular Service in areas other than the SMSA. After the date of the expiration of the wireline allocation of the FCC nothing shall preclude any Limited Partner or an Affiliate thereof from providing Cellular Service in areas within the SMSA. Any such Limited Partner or affiliate shall however withdraw from the Partnership. . . .

3. Section 8.8 of the Agreement provides:

> 8.8 *Cellular Service in Other Areas.* Nothing herein shall preclude the General Partner or an Affiliate thereof from providing Cellular Service independently from the Partnership in areas other the SMSA and adjoining areas. Applications by the General Partner or an Affiliate thereof to provide Cellular Service in areas adjoining the SMSA shall be deemed to be made on behalf of the Partnership pursuant to the terms of Section 7.2(f).

In 1988, the Federal Communications Commission ("FCC") announced a lottery to provide cellular service in certain RSAs. On December 7, 1988, BAMS submitted applications to provide service for New Jersey RSAs 1 and 3, which adjoin the Allentown SMSA. FCC rules require the disclosure of the real party in interest on such applications, and BAMS did not indicate that the Partnership had any interest in the application. It is not disputed that, if BAMS was obligated under the Agreement to transfer the licenses to the Partnership at a later time, BAMS should have disclosed that arrangement on the application with the FCC.

In order to avoid the uncertainties of a lottery among wireline carriers for New Jersey RSAs 1 and 3, BAMS reached settlement agreements in November 1989 with the other lottery participants whereby all carriers except BAMS would withdraw from the lottery. BAMS paid cash and withdrew its applications in other markets as consideration for the settlements. On November 6, 1989, BAMS filed the settlement agreements with the FCC.

Public notice of the settlements was issued on November 9, 1989, and the FCC published public notice of BAMS as the tentative selectee for RSAs 1 and 3 on May 16 and 22, 1990. On August 30, 1990, the FCC issued initial regulatory license approval to BAMS and permits for construction of the cellular systems.

BAMS sought to obtain 100% ownership of the New Jersey RSAs so it could integrate them into a system encompassing all of New Jersey and the New York City area, to be called the New Jersey Plus Supersystem. On July 5, 1991, BAMS filed an application with the FCC to transfer the New Jersey RSA 1 license to Bell Atlantic Mobile Systems of Northern New Jersey ("BAMS–NNJ"). The FCC gave public notice of this transfer application on July 31, 1991. On October 4, 1991, BAMS filed an application with the FCC to transfer the New Jersey RSA 3 license to BAMS–NNJ, notice of which was made public on November 15, 1991. BAMS filed for and received a license

to operate a cellular system in New Jersey RSA 3 on November 27, 1991.

Ultimately, BAMS possessed licenses to provide cellular service in all New Jersey RSA markets. In September 1991, BAMS announced the New Jersey Plus Supersystem, which would charge one "home rate" throughout New Jersey and the New York City area. BAMS claims that the Supersystem would not have been feasible if it faced conflicting duties to maximize the profits of individual RSAs by charging higher roaming rates to customers from other areas of New Jersey and New York.

In moving for summary judgment before the Court of Chancery, BAMS argued that its actions in acquiring New Jersey RSAs 1 and 3 put USCIC on notice that BAMS was acting on its own behalf, particularly in view of the absence in its FCC application of any indication that it was acting for anyone but itself. Moreover, at no time did BAMS inform the Partnership that it had acquired additional licenses for the Partnership or report these acquisitions in the Partnership's quarterly financial statements. BAMS never made a capital call on the limited partners to pay their share of the costs of expansion in RSAs 1 and 3.

## II.

As previously noted, BAMS enjoyed a hybrid existence under the Agreement—as both a limited and a general partner. BAMS acted on its own behalf in seeking the necessary regulatory approvals and asserts that, as a limited partner, § 10.4 of the Agreement permitted it to compete with Partnership. BAMS claims that its rights under § 10.4 are not limited by its duties as general partner as described in § 8.8. Thus, BAMS argues, it may compete with the Partnership in adjoining RSAs.

USCIC maintains, however, that, under the Agreement, the permits and licenses for the two New Jersey RSAs are deemed to have been obtained on behalf of the Partnership since sections 4.4, 7.2(f), and 8.8 of the Agreement make provision for the general partner to obtain licenses and later transfer

them to the Partnership.[4] Not only is the general partner, BAMS, deemed to act on behalf of the Partnership, the argument runs, it may not act otherwise under § 8.8.

To enforce this position, USCIC filed suit on May 13, 1993, alleging breach of fiduciary duty and breach of the Partnership Agreement. USCIC contends that BAMS has a duty under the Agreement not to compete with the Partnership in adjoining areas. Furthermore, the applications that BAMS made in adjoining areas are deemed to be made on behalf of the Partnership and legal title should be transferred to reflect this, according to USCIC. BAMS disputes USCIC's interpretation of the Agreement, contending that as a limited partner it was entitled to obtain licenses in adjoining areas for itself.

BAMS filed a motion to dismiss the complaint. On March 11, 1994, the Court of Chancery granted BAMS's motion in part. *United States Cellular Investment Co. of Allentown v. Bell Atlantic Mobile Systems, Inc.*, Del.Ch., C.A. No. 12984, Berger, V.C., 1994 WL 116207 (March 11, 1994). The court dismissed the claim alleging breach of fiduciary duty. 6 *Del.C.* § 17–1101(d) provides a safe harbor against claims of breach of fiduciary duty for general partners who act in good faith reliance on the partnership agreement. The Court of Chancery found USCIC's complaint insufficient to state a claim upon which relief could be granted. "In order for the breach of fiduciary duty claim to survive, USCIC would have to allege additional facts concerning Bell Atlantic's conduct from which an inference of bad faith

could be drawn." *Id.*, mem.op. at 5. Although it dismissed the fiduciary claim, the court allowed the breach of contract claim to proceed.

Thereafter BAMS moved for summary judgment on the remaining claim on the grounds of laches and the statute of limitations. In granting this motion, the court found that the analogous statute of limitations had run and was not equitably tolled. *United States Cellular Investment Co. of Allentown v. Bell Atlantic Mobile Systems, Inc.*, Del.Ch., C.A. No. 12984, Tr. at 96–100, Balick, V.C. (July 19, 1995). Alternatively, the court held that the action was also barred under the traditional form of laches, finding that USCIC had unreasonably delayed bringing suit after it should have known that its cause of action had accrued, and this delay prejudiced BAMS.

The Court of Chancery ruled that USCIC could have enforced its rights when BAMS acted inconsistently with its obligations under the Agreement. The court found the first inconsistent act to be the FCC filing on December 7, 1988 that did not list the Partnership as a real party in interest. Given USCIC's later revealed interpretation of section 8.8, the court reasoned that any act inconsistent with this interpretation must obviously be viewed as a hostile act. Since such conduct, at least in the eyes of USCIC, was a breach of contract, the Court of Chancery applied the three-year statute of limitations by analogy. 10 *Del.C.* § 8106.

In rejecting USCIC's contention that the running of the analogous period of limitations should be equitably tolled, the Court of

4. The Agreement provides:
   4.4 *Licenses.* The General Partner shall, on behalf of the Partnership ... (a) cause to be transferred to the Partnership's name all licenses, permits or other regulatory approvals necessary to provide Cellular Service; (b) if other local, state or federal licenses, permits, certificates of convenience, franchises, or other approvals or authorities are necessary to provide Cellular Service, make application to the appropriate authority.
   7.2 *Powers of the General Partner.* In addition to those powers vested pursuant to Section 7.1, the General Partner hereby is vested with the power to:
   (f) Subject to the provisions of Sections 5.2 and 5.4 herein, apply to the FCC on behalf of the Partnership for permits and licenses to provide Cellular Service in areas adjoining the SMSA where such adjoining areas and the SMSA have a community of interest and where such expansion appears to be economically justifiable and would result in Cellular Service being provided by the Partnership in a unified area which includes the SMSA and adjoining areas, negotiate on behalf of the Partnership to reach mutually acceptable arrangements with other carriers desiring to provide service in such areas and decide and conduct all matters pertaining to such applications and to the Cellular Service that may result from such applications.

Chancery ruled that USCIC had a duty of reasonable inquiry. Had such inquiry been made USCIC "would have realized well within the three-year period that the application was being made in behalf of Bell Atlantic Mobile Systems, Incorporated, and not in behalf of the limited partnership." Tr. at 98.

In ruling for BAMS on the alternative ground that USCIC's claim was barred using the traditional formulation of laches, the Court of Chancery concluded that USCIC's delay was unreasonable and that BAMS was materially prejudiced as a result of this delay. *See Nationwide Mut. Ins. Co. v. Starr*, Del.Supr., 575 A.2d 1083, 1088 (1990). USCIC admitted knowledge of the claim in July 1991, two years before it filed suit. In those two years, BAMS proceeded with the development of the New Jersey Plus Supersystem. To permit USCIC to maintain its suit in the face of BAMS's substantial change in position would be inequitable in the view of the trial court.

### III.

For the purposes of reviewing the grant of summary judgment, we assume that USCIC's interpretation of section 8.8 of the Agreement is correct. Thus, any action taken by BAMS on its own behalf in adjoining RSAs would constitute a breach of the Agreement for the purpose of analyzing the timeliness of the claims asserted in the litigation.

■ USCIC argues that it is inappropriate to grant summary judgment on laches since it is a factually intensive issue. *See Schmidt v. Schmidt*, Del.Ch., C.A. Nos. 1116–K & 1117–K, slip op. at 5, Chandler, V.C., 1994 WL 198704 (May 3, 1994). Summary judgment is inappropriate when material factual disputes exist, such as when a party is chargeable with knowledge of a latent or hidden condition. *In re Asbestos Litig.*, Del.

Supr., 673 A.2d 159, 163 (1996). Summary disposition may be appropriate, however, where the plaintiff has not pled, and/or the record is devoid of facts indicating, that the statutory limitations period should not run by analogy or is tolled. *See Kahn v. Seaboard Corp.*, Del.Ch., 625 A.2d 269, 277 (1993) (bar of limitations can be raised on motion to dismiss).[5]

### A.

■ BAMS asserts, and the Court of Chancery held, that USCIC unfairly delayed in bringing suit so that any recovery should be barred by laches. Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after the plaintiff knew of an infringement of his rights, thereby resulting in material prejudice to the defendant. *Nationwide Mut. Ins. Co. v. Starr*, Del.Supr., 575 A.2d 1083, 1088 (1990).

■ On its face, this is not, however, a case where laches applies in its traditional form. Where a plaintiff seeks a legal remedy in a court of equity and a statute of limitations exists for an analogous action at law, the statutory period may create a presumptive time period for application of laches to bar a claim. *See Adams v. Jankouskas*, Del.Supr., 452 A.2d 148, 157 (1982); *Wright v. Scotton*, Del.Supr., 121 A. 69, 73 (1923) ("Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law. . . .").[6] Absent some unusual circumstances, a court of equity will deny a plaintiff relief when suit is brought after the analogous statutory period. *Adams*, 452 A.2d at 157; *Wright*, 121 A. at 73. In this case, USCIC has offered no justification for its delay in bringing suit, and it is thus appropriate to apply the statutory period set forth in 10 *Del.C.* § 8106. *See Adams*, 452 A.2d at 157.

---

**5.** *Accord A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, Fed.Cir., 960 F.2d 1020, 1035–39 (1992); *McMahon v. Pan American World Airways, Inc.*, 5th Cir., 297 F.2d 268, 270 (1962).

**6.** *See also Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168, 169–70 (1976); *Bay Newfoundland Co. v. Wilson & Co.*, Del.Ch., 4 A.2d 668, 671 (1939); *accord*

*Intertech Licensing Corp. v. Brown & Sharpe Mfg. Co.*, D.Del., 708 F.Supp. 1423, 1434 (1989) ("Normal equity practice . . . considers the passage of time equivalent to a comparable statute of limitations presumptive of laches."); *Gruca v. U.S. Steel Corp.*, 3rd Cir., 495 F.2d 1252, 1260 (1974).

## B.

In addressing when an action is time-barred, a necessary first step in the analysis is determining the time when the action accrued. *Cf. Ewing v. Beck,* Del.Supr., 520 A.2d 653, 662–64 (1987). In this case, the breach occurred when BAMS filed with the FCC in its own name. Had it been acting on behalf of the partnership, BAMS should have disclosed that fact in its filing in conformity with regulatory standards.

■ USCIC argues that this filing may not necessarily constitute a breach of the Agreement because BAMS could have been acting on behalf of the Partnership but falsely disclosed to the FCC that it was acting on its own behalf. We find that USCIC's interpretation to be highly unrealistic in light of other acts taken by BAMS. When the record of events before that time is viewed in its entirety, the only reasonable interpretation is that BAMS was acting on its own behalf.

Since BAMS was obligated to obtain adjoining RSA licenses only for the benefit of the Partnership, the Partnership Agreement was breached for one of two alternative reasons. The first alternative assumes that BAMS was acting on its own behalf, and the second assumes that it was deemed to be acting for the Partnership. First, and most obviously, by acting on its own behalf, this action represents an attempt by BAMS, the general partner, to compete with the Partnership contrary to § 8.8.

Secondly, even if BAMS was acting for the Partnership or was deemed to have made the application of behalf of the Partnership, BAMS still violated the terms of the Agreement since it did not disclose the Partnership's interest on the application. Section 8.6 required BAMS to use its best efforts to comply with "every obligation ... imposed on the Partnership by law or regulatory authority." By filing a false application statement, BAMS would have broken the law or, at the very least, been in violation of FCC regulations. Thus, whether BAMS's actions in obtaining the license are characterized as

intending to comply with the Agreement or not, BAMS violated that Agreement by applying solely in its own name. We therefore agree with the Court of Chancery that the analogous limitations period began to run on the date of the FCC application, December 7, 1988.

## C.

USCIC contends that the measurement of the running of the statute of limitations should be tolled under the guidelines set forth in *Kahn v. Seaboard Corp.,* Del.Ch., 625 A.2d 269 (1993). The *Seaboard* court held that "where wrongful self-dealing is alleged in a derivative action, the statute does not run against the plaintiff until he or she knew or had reason to know the facts alleged to give rise to the wrong." *Id.* at 276–77. USCIC argues that it was entitled to rely on the assumption that BAMS's activities were consistent with its fiduciary duties to USCIC, so USCIC had no obligation to monitor BAMS for compliance with the Agreement. *See id.* at 275.

■ The doctrine of equitable tolling does not apply here, however, because USCIC had reason to know of the breach of the Agreement. Applying *Seaboard* in a case involving a limited partnership, the Court of Chancery held that

[s]hareholders or interest holders need not delve aggressively into the internal affairs of a corporation or a limited partnership in order to assure that a non-public, self-dealing transaction is not foreclosed from attack by limitations, but when facts are disclosed that give rise to inquiry, an applicable statute of limitations will require timely action to preserve rights.

*In re USACafes, L.P., Litig.,* Del.Ch., C.A. No. 11146, Allen, C., 1993 WL 18769 (Jan. 21, 1993), *reprinted in* 18 Del.J.Corp.L. 1204, 1213. In *USACafes* the Chancellor found that various public filing on the part of the general partner constituted "disclos[ure] to reasonably alert interest holders" of the infringement of their rights. *Id.*[7] Conse-

---

7. Chancellor Allen in *Seaboard* noted that "the opinion of Judge Leahy in *Tobacco and Allied Stocks v. Transamerica Corp.,* D.Del., 143 F.Supp. 323, 328–29 (1956), is instructive." Federal and Delaware law seem to agree on this point:

quently, the plaintiffs were not allowed to amend their complaint to include the time-barred claims.

■ Similarly, in this case USCIC had notice from the public filings and from BAMS's failure to disclose at Partnership meetings or in quarterly financial statements any interest on the part of the Partnership in the disputed licenses. This notice was sufficient to prompt inquiry. Further notice may be inferred from the fact that BAMS never requested a capital contribution from the Partnership to cover its costs in developing the RSA licenses. USCIC has the burden to prove that the running of the limitations period should have been tolled, *Seaboard*, 625 A.2d at 277, but the undisputed facts of this case, *e.g.*, the public filings and actions of BAMS, indicate that USCIC was chargeable with notice of the contractual breach. Accordingly, the doctrine of equitable tolling does not allow USCIC to pursue its claim.

The analogous period of limitations began to run on December 7, 1988. USCIC filed suit on May 13, 1993, after the expiration of the three-year limitations period. We perceive no unusual circumstances to indicate that the three-year period should not be applied. The Court of Chancery therefore correctly ruled that USCIC's suit was untimely.

## IV.

■ Turning now to the claim for breach of fiduciary duty, we note that only the issue of the dismissal of that claim under 6 *Del.C.* § 17–1101(d) was presented below and is before us. Supr.Ct.R. 8. BAMS seems to argue in a footnote of its Answering Brief that if we affirm the 1995 laches ruling on the contract claim then we need not review the dismissal of the fiduciary duty claim. This argument rests on the mistaken presumption that the same laches analysis applies to both claims. The sole issue before the Vice Chancellor in the laches ruling was the breach of contract claim. Whether or not the fiduciary duty claim was time-barred

was not addressed by that ruling and was not argued by the parties. We thus address here only the question of whether the 1994 dismissal of the breach of the fiduciary duty claim was correct as a matter of law. We conclude that it was.

The Court of Chancery's dismissal of the fiduciary duty claim was based on the failure of USCIC to plead that BAMS acted in bad faith. A general partner acting in good faith reliance on the provisions of the partnership agreement is shielded from liability for breach of fiduciary duty. 6 *Del.C.* § 17–1101(d). The complaint as it now reads is consistent with the interpretation that BAMS believed its actions were permitted under the Agreement, *i.e.*, that BAMS took its actions in good faith. The Complaint asserts only that "Defendants have willfully failed and refused to share the right to provide cellular services in New Jersey RSAs 1 and 3 with USCIC Allentown and the Partnership." Compl. ¶ 29. While this allegation asserts that BAMS's acts were intentional, it does not assert that BAMS acted in knowing breach of the Agreement. The 1994 order therefore properly dismissed the complaint as failing to state a cause of action under Delaware law.

While we affirm the dismissal of the fiduciary duty claim, we assume that USCIC may exercise its right to amend its complaint. Ch.Ct.R. 15; *Mullen v. Alarmguard of Delmarva, Inc.*, Del.Supr., 625 A.2d 258, 263 (1993). Accordingly, our affirmance of the 1994 ruling does not necessarily end the litigation.

## V.

In sum, we find USCIC's claim for breach of contract to be barred by laches. Our ruling and analysis with regard to the breach of contract claim does not apply to the breach of fiduciary duty claim, which was the subject of the 1994 ruling of the Court of Chancery. We affirm the 1994 ruling of the Court of Chancery which dismissed that por-

[T]he federal doctrine means limitation and laches does not begin to run until evidence of [the alleged wrong] is discovered or could have been discovered had reasonable diligence been exercised, for whatever is notice calling for inquiry is notice of everything to which such inquiry might have led.

143 F.Supp. at 328–29, *cited in Seaboard*, 625 A.2d at 276.

tion of USCIC's complaint since the complaint did not sufficiently allege that BAMS's actions were taken in bad faith.

The July 17, 1995 and March 11, 1994 rulings of the Court of Chancery are therefore AFFIRMED.