# IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRYAN REILLY, individually on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2024-0654-LWW |
| KEITH L. HORN, ZACHARY TARICA, THOMAS STAGGS, PETER SCHLESSEL, MARTIN LUTHER KING III, TERESA MILES WALSH, SHEILA A. STAMPS, IDAN SHANI, SALIL MEHTA, KEVIN MAYER, JEREMY TARICA, FOREST ROAD ACQUISITION SPONSOR LLC, and FOREST ROAD COMPANY LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: July 1, 2025
Date Decided: September 30, 2025

Michael J. Barry, Kelly L. Tucker, GRANT & EISENHOFER P.A., Wilmington, Delaware; David Wissbroecker, GRANT & EISENHOFER P.A., San Francisco, California; Peretz Bronstein, Eitan Kimelman, BRONSTEIN, GEWIRTZ & GROSSMAN, LLC, New York, New York; *Attorneys for Plaintiff Bryan Reilly*

John L. Reed, Peter H. Kyle, Kelly L. Freund, Courtney Kurz, DLA PIPER LLP, Wilmington, Delaware; Melanie E. Walker, John R. Loftus, DLA PIPER LLP, Los Angeles, California; *Attorneys for Defendants Keith L. Horn, Zachary Tarica, Thomas Staggs, Peter Schlessel, Teresa Miles Walsh, Sheila A. Stamps, Idan Shani, Salil Mehta, Kevin Mayer, Jeremy Tarica, Forest Road Acquisition Sponsor LLC and The Forest Road Company LLC*

John L. Reed, Peter H. Kyle, Kelly L. Freund, Courtney Kurz, DLA PIPER LLP, Wilmington, Delaware; Joseph F. Kroetsch, BOIES SCHILLER FLEXNER LLP, Armonk, New York; Joshua I. Schiller, BOIES SCHILLER FLEXNER LLP, New York, New York; *Attorneys for Defendant Martin Luther King III*

**WILL, Vice Chancellor**

This case presents a now-familiar story. The plaintiff accuses purportedly conflicted SPAC fiduciaries of impairing public stockholders' redemption rights through a deficient proxy statement.

But this case is different in a critical respect: it is time-barred. The alleged informational injury occurred in May 2021 when the proxy was disseminated. This suit was filed in June 2024—over three years later.

By now, equity has nearly digested the "bulge" of SPAC litigation.[1] This case is dismissed.

## I.      FACTUAL BACKGROUND

The following facts are drawn from the Verified Amended Class Action Complaint, the documents it incorporates by reference, and matters subject to judicial notice.[2]

---

[1] *Solak v. Mountain Crest Cap. LLC*, 2024 WL 4524682, at *1 (Del. Ch. Oct. 18, 2024) (observing that despite the reduction in SPACs "on the ground," "the bulge of SPAC carcasses continue[d] to be digested in equity").

[2] Verified Am. Class Action Compl. (Dkt. 42) ("Am. Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))). Exhibits to the transmittal affidavit of Kelly L. Freund in support of the defendants' opening brief are cited as "Defs.' Ex. __." Dkt. 45.

## A. Forest Road's Formation

Forest Road Acquisition Corp. was a special purpose acquisition company (SPAC) formed as a Delaware corporation in September 2020.[3] Its sponsor, Forest Road Acquisition Sponsor LLC (the "Sponsor"), was charged with supporting the SPAC while it sought a private company target.[4] The Sponsor, in turn, was controlled by The Forest Road Company LLC ("FRC"), led by Zachary Tarica and Jeremy Tarica.[5]

Before Forest Road's initial public offering, the Sponsor purchased 7.5 million "founder shares" for $25,000—approximately $0.0033 per share.[6] This structure created a financial incentive for the Sponsor and its members to complete a business combination. If a de-SPAC merger closed, the founder shares would represent 20% of the total equity in the combined company.

The Sponsor selected the initial members of Forest Road's Board of Directors.[7] Several of the Board's seven members were affiliated with a related

---

[3] Am. Compl. ¶¶ 1, 35; *see also* Defs.' Ex. 2 (Prospectus, Forest Road Acquisition Corp., dated Nov. 24, 2020).

[4] Am. Compl. ¶¶ 15, 47.

[5] *Id.* ¶¶ 15, 35, 46-48.

[6] *Id.* ¶ 36. Zachary Tarica beneficially held the founder shares. *Id.* ¶ 36. Concurrent with the IPO, the Sponsor also acquired 5.3 million private placement warrants for $8 million.

[7] They are Keith L. Horn (CEO), Zachary Tarica (Chairperson & CIO), Thomas Staggs, Peter Schlessel, Martin Luther King III, Teresa Miles Walsh, and Sheila A. Stamps. *Id.* ¶¶ 16, 18-22.

SPAC, Forest Road Acquisition Corporation II. Forest Road's Board members received pecuniary interests in the Sponsor's founder shares.[8]

### B. Forest Road's IPO

Forest Road completed its IPO on November 30, 2020, selling public units to investors for $10 each.[9] Each public unit consisted of one public share of Forest Road Class A common stock and one-third of a public warrant.[10]

In the event of a business combination, each public stockholder had the right to redeem their Class A stock for $10 per share plus accrued interest.[11] Redemptions would minimize the funds available to complete a business combination. In the event of a liquidation, public stockholders would receive the same repayment.[12] Founder shares, however, carried neither redemption nor liquidation rights.[13] They would expire valueless if a business combination was not completed by Forest Road's liquidation deadline.[14]

---

[8] *Id.* ¶¶ 18-25. Some also gained an interest in the Sponsor's private placement warrants. *Id.* ¶¶ 16-17, 19, 21, 24, 26-27.

[9] Defs.' Ex. 1 (Proxy Statement, Forest Road Acquisition Corp., dated May 27, 2021) ("Proxy") 115. The complaint erroneously states that the IPO occurred on March 9, 2021. Am. Compl. ¶ 37. That appears to be the date of Forest Road II's IPO.

[10] Am. Compl. ¶ 37.

[11] *Id.*

[12] *Id.* ¶ 38.

[13] *Id.* ¶ 40.

[14] *Id.*

### C. The Merger Process

Forest Road began its search for a merger target around the time of its IPO.[15] In late November 2020, The Raine Group LLC contacted Forest Road's Strategic Advisory Committee about a potential merger with The Beachbody Company Group, LLC ("Legacy Beachbody").[16] Raine was the largest stockholder of Legacy Beachbody, an online health and fitness platform.[17]

Forest Road and its financial advisors began due diligence in early December 2020.[18] They were given optimistic "management case" financial projections from Legacy Beachbody.[19] Based on those materials, Legacy Beachbody appeared to have promise in the wake of the COVID-19 pandemic, as people turned to at-home workouts.[20]

On December 8, Raine submitted a draft letter of intent (LOI) to Legacy Beachbody.[21] Negotiations ensued.[22] Forest Road received due diligence materials

---

[15] *See* Proxy 116.

[16] *Id.*

[17] Am. Compl. ¶ 51. The Strategic Advisory Committee members were Staggs, Kevin Mayer, Shaquille O'Neal, and Max Burg. *Id.* ¶ 26 n.17.

[18] *Id.* ¶¶ 57-58.

[19] *Id.* ¶¶ 59-60.

[20] *Id.* ¶ 142; *see also* Proxy 53 (describing Legacy Beachbody's fitness offerings).

[21] Am. Compl. ¶ 64.

[22] *Id.* ¶¶ 68-69.

alerting it to Legacy Beachbody's payouts to "coaches" through a multi-level marketing (MLM) structure.[23] The Forest Road team then developed a more conservative set of "base case" projections for Legacy Beachbody that resulted in a significantly lower valuation range ($1.308 to $2.465 billion). The base case projections were contextualized by risks to Legacy Beachbody's performance, including post-COVID returns to gyms.[24]

The final LOI was executed on December 17.[25] It assigned Legacy Beachbody a pre-money valuation of $2.9 billion.[26]

On December 29, certain Legacy Beachbody insiders sold $72.5 million of their equity to Raine and other investors (the "December Sale").[27] The December Sale was based on a $1.5 billion valuation of Legacy Beachbody—nearly half the value reflected in the final LOI.[28]

In early January 2021, Forest Road's Board met to discuss the proposed merger. They deliberated on potential setbacks to stockholder approval, including

---

[23] *Id.* ¶¶ 71, 153.

[24] *Id.* ¶¶ 72-77.

[25] *Id.* ¶ 77.

[26] *Id.* ¶¶ 78-79.

[27] *Id.* ¶¶ 29, 89.

[28] *Id.* ¶ 29.

the "public scrutiny" over and "increased regulatory standards" for MLMs.[29] The Board approved the merger on February 8, and a merger agreement was executed the next day.[30]

### D. The Proxy

On May 28, 2021, Forest Road disseminated a proxy statement to its stockholders, ahead of a June 24 vote.[31] The proxy was purportedly materially false and misleading in several ways.[32]

First, the proxy did not include the base case projections developed by Forest Road's team but disclosed a more optimistic set (the "Proxy Projections").[33] The Proxy Projections forecasted a compound average growth rate of 30%, which was reliant on a surge in digital subscriptions due to gym closures.[34] The information was not counterbalanced by risks of unsustainable growth post-pandemic.[35]

Second, the proxy omitted information about the December Sale of Legacy Beachbody stock.[36] Although the sale was mentioned, the identities of the Legacy

---

[29] *Id.* ¶¶ 87-88.

[30] *Id.* ¶¶ 97-98.

[31] Proxy 87-88; Am. Compl. ¶ 99.

[32] Am. Compl. ¶ 103.

[33] *Id.* ¶ 148.

[34] *Id.* ¶¶ 136-38.

[35] *Id.* ¶¶ 138, 140.

[36] *Id.* ¶ 126.

6

Beachbody insiders who participated were not. The valuation corresponding to the December Sale was also omitted.[37]

Finally, the proxy suggested a $10.00 per share value for the post-merger company. It allegedly failed to reveal the high degree of dilution and dissipation from transaction costs and warrants, which resulted in Forest Road contributing less than $7.10 per share to the merger.[38]

The merger was approved by 99.5% of Forest Road's voting shares, after less than 28% of public shares were redeemed.[39] The merger closed on June 25, 2021.[40] The combined company's ("New Beachbody") shares began trading on the New York Stock Exchange on June 28, 2021.[41]

### E.    Post-Merger Performance

New Beachbody's performance rapidly deteriorated. It missed the financial targets set out in the Proxy Projections.[42] New Beachbody's stock price declined, falling below $1.00 per share by November 2022.[43]

---

[37] *Id.* ¶¶ 128-29.

[38] *Id.* ¶¶ 119-20.

[39] *Id.* ¶ 102.

[40] *Id.* ¶ 28.

[41] *Id.* ¶ 102.

[42] *Id.* ¶ 171.

[43] *Id.* ¶¶ 10, 164.

In May 2023, a class action lawsuit was filed against New Beachbody, alleging the MLM compensation structure for its coaches violated California labor laws.[44] New Beachbody's stock price fell further. By early November 2023, its stock closed around $0.19 per share.[45]

Within a few months, in February 2024, plaintiff Bryan Reilly served a Section 220 demand on New Beachbody.

### F. This Litigation

Nearly three years after the merger, on June 14, 2024, Reilly filed this putative class action against the Sponsor and its members, members of Forest Road's Board and Strategic Advisory Committee, and certain Forest Road officers.[46] After the defendants moved to dismiss, he filed the operative amended complaint on December 17, 2024.[47] His core theory is that the defendants, incentivized to close a business combination, disloyally impaired public stockholders' redemption rights by failing to provide material information needed to make an informed redemption

---

[44] *Id.*

[45] *Id.* ¶ 10.

[46] Dkt. 1.

[47] Dkt. 42.

8

decision.[48] He brought claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment against various defendants.[49]

A motion to dismiss was filed once again.[50] After briefing was complete,[51] oral argument was presented on July 1, 2025, after which I took the motion under advisement.[52]

## II. LEGAL ANALYSIS

The defendants seek dismissal under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[53] The governing standard requires the court to "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[54] The court need not "accept every strained interpretation of [the plaintiff's]

---

[48] Am. Compl. ¶ 11.

[49] *Id.* ¶¶ 183-216.

[50] Opening Br. in Supp. of Defs.' Mot. to Dismiss Am. Compl. (Dkt. 45) ("Defs.' Opening Br.").

[51] *See* Pl.'s Br. in Opp. to Defs.' Mot. to Dismiss Am. Compl. (Dkt. 47) ("Pl.'s Answering Br."); *see also* Defs.' Reply Br. in Supp. of Mot. to Dismiss Am. Compl. (Dkt. 51) ("Defs.' Reply Br.").

[52] *See* Tr. of July 1, 2025 Hr'g on Defs.' Mot. to Dismiss (Dkt. 60).

[53] Ct. Ch. R. 12(b)(6).

[54] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

allegations"[55] or conclusory statements "unsupported by allegations of specific facts."[56] Dismissal is appropriate only if the plaintiff "would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[57]

The defendants raise multiple grounds for dismissal. First, they argue that the plaintiff's claims are barred by laches. They also contend that the business judgment rule insulates the defendants, that the plaintiff failed to plead a reasonably conceivable breach of fiduciary duty claim, that the claims against certain individual defendants are meritless, and that the aiding and abetting and unjust enrichment claims are not viable.[58] The first argument is dispositive; the plaintiff's claims are untimely.

## A. The Defendants' Laches Argument

The defendants assert that the plaintiff's claims are barred by laches.[59] As the party raising a laches defense, they "must show that the plaintiff knew of the invasion

---

[55] *Gen. Motors (Hughes)*, 897 A.2d at 168 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[56] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom.*, *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

[57] *Savor*, 812 A.2d at 896-97.

[58] Defs.' Opening Br. 1-3.

[59] *Id.* at 20-21.

10

of his rights, that he unreasonably delayed in bringing suit to vindicate those rights, and resulting prejudice to the defendant."[60] The defendants have met their burden.

The plaintiff's claims accrued when Forest Road's proxy was distributed to stockholders. He sued over three years later. His delay was both unreasonable and prejudicial.

### 1.    Claim Accrual

"In addressing when an action is time-barred, a necessary first step in the analysis is determining the time when the action accrued."[61] The parties take starkly different views of this issue. The plaintiff believes that his claims accrued "no earlier than the redemption deadline."[62] But the defendants insist that the plaintiff's claims accrued when the proxy was issued. The defendants are correct.

### a.    The Informational Injury

A breach of fiduciary claim "accrues at the moment of the wrongful act—not when the harmful effects of the act are felt—even if the plaintiff is unaware of the wrong."[63] The relevant breach in this case is the impairment of public stockholders'

---

[60] *Stein v. Blankfein*, 2019 WL 2323790, at *10 (Del. Ch. May 31, 2019).

[61] *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 503 (Del. 1996).

[62] Pl.'s Answering Br. 67-68.

[63] *In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *5 (Del. Ch. Oct. 17, 2007), *aff'd sub nom.*, *Int'l Bhd. Teamsters v. Coca-Cola Co.*, 954 A.2d 910 (Del. 2008); *see also Fike v. Ruger*, 754 A.2d. 254, 260 (Del. Ch. 1999) ("A cause of action accrues at the moment

11

redemption rights through a materially deficient proxy.[64] The plaintiff alleges that the defendants breached their fiduciary duties by "disseminat[ing] . . . a false and misleading proxy statement" that was "a work of fiction" and withheld "critical information from Forest Road's public stockholders."[65] His claims accrued at the moment of that act.[66] The issuance of a materially misleading proxy would cause an immediate informational injury by tainting the stockholder decision-making process, regardless of whether the redemption deadline had passed. Any harmful effects would come later.[67]

The plaintiff's insistence that his claims accrued at the redemption deadline rests on an improper conflation of two distinct legal concepts: injury and damages.[68]

---

of the wrongful act, even if the plaintiff is ignorant of the wrong."), *aff'd*, 752 A.2d 112 (Del. 2000); *Sutherland v. Sutherland*, 2010 WL 1838968, at *8 (Del. Ch. May 3, 2010) ("A claim for breach of fiduciary duty accrues at the time of the wrongful act." (citing *Wal-Mart Stores, Inc. v. AIG Life Ins.*, 860 A.2d 312, 319 (Del. 2004))).

[64] *See* Am. Compl. ¶¶ 7-9; *see also In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 318 A.3d 306, 318-19 (Del. Ch. 2024) (describing the nature of a similar claim), *aff'd*, 337 A.3d 1214 (Del. 2024) (TABLE).

[65] Am. Compl. ¶¶ 7-8; *see also id.* ¶¶ 3, 9, 186-87, 195, 203.

[66] *See, e.g.*, *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008) (holding that the claims accrued when alleged misrepresentations were made).

[67] Am. Compl. ¶ 9 (alleging that "[a]s a natural and predictable consequence of the [p]roxy's false and misleading disclosures and omissions," the merger was approved and stockholders' redemption rights were impaired).

[68] Pl.'s Answering Br. 67; *see also* Defs.' Reply Br. 8-10. Most of the cases cited by the plaintiff fall outside the breach of fiduciary duty context. *See* Pl.'s Answering Br. 67 n.247 (citing cases); *see also ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d

12

His injury was the deprivation of material information needed to make an informed redemption decision, which occurred when the allegedly false proxy was issued. His damages, by contrast, were the losses following his non-redemption. Delaware law confirms this distinction, providing that "[t]he statute of limitations can start to run before any actual or substantial damages occur."[69]

    b.    The Plaintiff's Counterarguments

The plaintiff advances two arguments in support of claim accrual post-dating the proxy's distribution. Neither is persuasive.

First, he maintains that the wrongdoing continued "through the close of the [m]erger" because the defendants had an ongoing duty to supplement Forest Road's

---

727, 734-35 (Del. 2019) (addressing timeliness in the context of a legal malpractice action); *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005) (considering a claim for fraud and breach of a contractual indemnification obligation); *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *8 (Del. Ch. Apr. 25, 2019) (granting a motion to dismiss based, in part, on laches and holding that the injury occurred when a company denied the plaintiff owned shares rather than at the time of merger); *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 896 (Del. 2009) (considering a personal injury and wrongful death action); *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del. 1992) (holding that a claim for negligent procurement of an insurance policy accrued when the policy was delivered, not when the insureds suffered a loss outside the policy).

[69] *ISN Software*, 226 A.3d at 735; *see also Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *18 (Del. Ch. June 29, 2005) (rejecting the argument that breach of fiduciary duty claims did not accrue until stockholders suffered investment loss and explaining that "a claim accrues as soon as the wrongful act occurs[,]" which is when "the plaintiffs were harmed").

disclosures.[70]  The complaint does not, however, state that any new, material facts arose between the proxy's filing and the redemption deadline that triggered a duty to update.[71]  Each of the alleged omissions concerns information known to the defendants *before* the proxy was disseminated.

Second, the plaintiff asserts that his claim was contingent on stockholder approval of the merger, as a failed vote would have led to his investment being returned.[72]  But the informational injury is not dependent on the merger's outcome. Public stockholders were harmed by the deprivation of information needed to make a decision, even if future events mitigated any financial loss.[73]  Further, the plaintiff's logic would create an untenable result where stockholders could not sue to correct a flawed proxy before a vote.[74]

---

[70] Pl.'s Answering Br. 66.

[71] *Cf. Laidlaw v. GigAcquisitions2, LLC*, 2023 WL 2292488, at *12-13 (Del. Ch. Mar. 1, 2023) (explaining that the renegotiation of convertible notes in a PIPE transaction occurred on the eve of the redemption deadline, which was not disclosed to stockholders).

[72] Pl.'s Answering Br. 68.

[73] That is particularly true in the SPAC context, where stockholder voting decisions are often "decoupled" from the redemption choice.  *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 721 (Del. Ch. 2023).

[74] *See Stein*, 2019 WL 2323790, at *10 ("Where there are alleged disclosure deficiencies, 'the preferred time to address such claims [is before a stockholder vote] in order to afford remedial relief appropriate for genuine informational deficiencies.'" (quoting *In re Solera Hldgs., Inc. S'holder Litig.*, 2017 WL 57839, at *8 (Del. Ch. Jan. 5, 2017))).

The wrongful action that Forest Road's fiduciaries allegedly took was issuing a materially deficient proxy. The proxy was distributed to stockholders on May 28, 2021. The plaintiff's claim accrued no later than that time.[75]

### 2. Untimeliness

The Court of Chancery looks to the statute of limitations by analogy when evaluating the application of laches.[76] The statute of limitations for a breach of fiduciary duty claim is three years.[77] The same limitations period applies to claims for aiding and abetting breaches of fiduciary duty and unjust enrichment.[78]

---

[75] The plaintiff also complains about harm from the approval of the merger, but that occurred before the proxy was issued.

[76] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016); *see In re Am. Intern. Gp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009) ("Even though this is a court of equity, equity follows the law, and this court will apply statutes of limitations by analogy.").

[77] *See* 10 *Del. C.* § 8106(a); *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) ("It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty.").

[78] *See Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012); 10 *Del. C.* § 8106.

15

Because the plaintiff's claim accrued on May 28, 2021, he had until May 28, 2024 to file his claims. His lawsuit was filed outside that period, on June 14, 2024.[79] Absent tolling, his claim is barred by the doctrine of laches.[80]

## B. The Plaintiff's Tolling Argument

The plaintiff invokes the equitable tolling doctrine, maintaining that the statute of limitations was tolled until "confidential information" was revealed in response to his Section 220 demand.[81] He must plead facts supporting the application of this tolling doctrine.[82] He has failed to do so.

---

[79] Prejudice to defendants is "presumed" when a plaintiff delays in pressing her claims. In addition to "*per se* prejudice, it is also reasonable to presume that [the d]efendants would confront difficulties in securing relevant documents and perhaps witnesses who could assist in the defense of claims." *Forman*, 2019 WL 1810947, at *10.

[80] *See Coca-Cola*, 2007 WL 3122370, at *5 (noting that under "well settled Delaware law," "when the allegations of a complaint show the action was commenced too late, a defendant may properly seek dismissal under the statute of limitations or the doctrine of laches").

[81] Pl.'s Answering Br. 70. The plaintiff also mentions fraudulent concealment but makes no attempt to argue whether or why that doctrine applies. *See id.* at 68 (heading). He asserts only that "equitable tolling would apply because Defendants fraudulently concealed the truth." *Id.* at 5; *see* Defs.' Reply Br. 10 n.5.

[82] *See Albert*, 2005 WL 1594085, at *19; *Dean Witter*, 1998 WL 442456, at *6 ("As the party asserting that tolling applies, plaintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."); *see also Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *12 (Del. Ch. Oct. 28, 2022) ("When a plaintiff invokes equitable tolling, it does not enjoy the plaintiff-friendly standard under Court of Chancery Rule 12(b)(6), and the court is not required to draw plaintiff-friendly inferences when determining whether the pleadings support tolling."); *Seiden v. Kaneko*, 2015 WL 7289338, at *8 (Del. Ch. Nov. 3, 2015) ("Though the [c]omplaint need not plead equitable tolling as such, it must, at a minimum, plead facts that support the existence of equitable tolling." (citation omitted)).

"Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing . . . where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[83]  The doctrine's rationale is that "even an attentive and diligent investor may rely, in complete propriety, upon the good faith of fiduciaries, and may be completely ignorant of transactions that constitute self-interested acts injurious to the [company]."[84]

      1.    <u>Inquiry Notice</u>

Even where self-dealing is alleged, equitable tolling lasts only until a plaintiff is put on "inquiry notice"—that is, when he "discovers (or exercising reasonable diligence should have discovered) his injury."[85]  "Inquiry notice does not require actual discovery of the reason for the injury" or "awareness of all of the aspects of

---

[83] *Albert*, 2005 WL 1594085, at *19; *see also AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2016 WL 4440476, at *15 (Del. Ch. Aug. 22, 2016) (describing the equitable tolling doctrine as applying "where a plaintiff reasonably relies on the competence and good faith of a fiduciary" who is alleged to have engaged in "wrongful self-dealing").

[84] *Albert*, 2005 WL 1594085, at *19.

[85] *Dean Witter*, 1998 WL 442456, at *6.

the alleged wrongful conduct."[86]  It exists when the plaintiff "knew or had reason to know of the facts constituting the wrong."[87]

By highlighting at least three omissions observable on the face of the proxy, the complaint pleads its own untimeliness, demonstrating that the plaintiff was on inquiry notice long before June 14, 2021.[88]  First, the proxy purportedly omitted key facts surrounding the December Sale, which the plaintiff mentions over a dozen times in the complaint.[89]  For example, the plaintiff alleges that although the proxy "state[d] that the enterprise valuation of the December Sale was $1.5 billion," it "d[id] not disclose the basis for this valuation."[90]  Second, the proxy allegedly lacked sufficient disclosures of the net cash per share that would be contributed in the merger.[91]  Third, the proxy failed to discuss the potential effect on the Proxy Projections if Beachbody subscriptions returned to pre-COVID levels.[92]

---

[86] *Id.* at *7.

[87] *Id.* at *6.

[88] June 14, 2021 is exactly three years before this suit was filed.

[89] *See* Am. Compl. ¶¶ 8, 29, 31, 89-94, 126-32, 147.

[90] *Id.* ¶ 127.  Similarly, the proxy did "not disclose the identities of the Legacy Beachbody 'current management' that participated in the December Sale, or the amount and value of the shares they sold."  *Id.* ¶ 129.

[91] *See id.* ¶ 122.

[92] *See id.* ¶ 8(ii).

Even if there were other material deficiencies, the proxy itself put the plaintiff on inquiry notice of "facts that ought to make him suspect wrongdoing."[93] He did not need to be aware of every "aspect[] of the alleged wrongful conduct."[94] It is enough that he should have known of the potential for disclosure violations.[95]

## 2. Post-Closing Performance

The plaintiff also suggests that he could not have been on inquiry notice until New Beachbody underperformed. He alleges that "[a]fter the [m]erger closed, a negative sequence of events rapidly unfolded that revealed to Forest Road public stockholders the truth about [Beachbody's] business."[96] But stockholders did not need to see how New Beachbody performed after closing to have notice of omissions in the proxy. Nor did New Beachbody's post-merger performance reveal any new information about the net cash per share contributed to the merger, the December

---

[93] *Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *13 (Del. Ch. Jan. 24, 2005).

[94] *Dean Witter*, 1998 WL 442456, at *7.

[95] *See In re Primedia S'holders Litig.*, 2013 WL 6797114, at *13 (Del. Ch. Dec. 20, 2013) (stating that stockholders are "not entitled to ignore red flags" and "must exercise 'reasonable diligence' when monitoring corporate filings for potential claims"); *Stein*, 2019 WL 2323790, at *11 ("[T]o the extent there is a[n omission of material information], such deficiency would be obvious from the face of the [p]roxy [s]tatement."); *see also In re USACafes, L.P., Litig.*, 1993 WL 18769, at *3-6 (Del. Ch. Jan. 21, 1993) ("[W]hen facts are disclosed that give rise to inquiry, an applicable statute of limitations will require timely action [by the plaintiff] to preserve rights.").

[96] Am. Compl. ¶ 10.

Sale, the base case projections, or what Forest Road knew pre-merger about Legacy Beachbody's post-COVID prospects.

In any event, "[i]nquiry notice does not require full knowledge of the material facts."[97] Rather, a plaintiff is on inquiry notice when he gains "sufficient knowledge to raise [his] suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued, would lead to the discovery of the injury."[98] Armed with the proxy, a reasonably diligent stockholder would have been spurred to inquire into whether the defendants had been forthright.

*      *      *

The plaintiff's claims are barred by laches. He could have raised his grievances within three years of the proxy's dissemination. He inexplicably waited longer to do so. Because dismissal is warranted on that basis, I need not address the defendants' other arguments.[99]

## III. CONCLUSION

The plaintiff's claims are time-barred. The defendants' motion to dismiss is therefore granted. The complaint is dismissed with prejudice.

---

[97] *Pomeranz*, 2005 WL 217039, at *3.

[98] *Id.*

[99] *See Coca-Cola*, 2007 WL 3122370, at *5.